F. WARNEBOLD, Appellee, v. THE GRAND LODGE OF THE
ANCIENT ORDER OF UNITED WORKMEN,
Appellant.

1.  **Mutual-Benefit Insurance:** CONTRACT: MEMBERSHIP IN TWO
    LODGES. The plaintiff's intestate was the holder of a certificate of
    membership in the Germania Lodge in the Ancient Order of United
    Workmen in which the plaintiff was named as the beneficiary. A
    division occurring in the order on account of some requirements of
    the supreme lodge, with which the then existing grand lodge and the
    above-named local lodge refused to comply, another local was organ-
    ized at the intestate's place of residence, composed of members who
    adhered to the supreme lodge, and called the Evening Star Lodge,
    which became a member of the defendant grand lodge. The plain-
    tiff's intestate united with the Evening Star Lodge, and subsequently
    he surrendered his certificate to the defendant, and a new certificate
    was issued to him. He also continued his membership, however, in
    the Germania Lodge, and after his death the plaintiff received from
    it the amount of insurance due on account of such membership. *Held,*
    that the deceased having made a new contract with the defendant
    lodge after the division in the order, the plaintiff's right of recovery
    thereunder was not affected by the payment made to her by the
    disloyal lodge.

2.  ———: PAYMENT OF DUES: FORFEITURE: ESTOPPEL. The deceased
    had become delinquent in the payment of his dues to the Evening
    Star Lodge, but no action was taken by the lodge suspending him
    from membership, and before his death these dues were paid. After
    his death the loss was reported, and an assessment made to pay the
    same, in which he was stated to be entitled to all the benefits of the
    order. *Held,* that notwithstanding by the constitution of the order
    the deceased was suspended from membership upon his default in the
    payment of dues without any action being taken thereon, the defend-
    ant was estopped by its action from claiming that the deceased was
    not a member in good standing at the time of his death.

3. ———: LODGE RESOLUTION: NOTICE. After the deceased became a member of the local loyal lodge, but before the issue of the certificate in controversy, the defendant lodge passed a resolution providing that it would not pay the beneficiary of any member who was affiliating with or paying assessments or dues to the disloyal lodge, "unless such member shall sever all connection with such rebel grand lodge," etc. Notice of this resolution was served upon the deceased, but the resolution as set forth in the notice did not contain the clause above quoted, and the jury found specially that the deceased did not have knowledge of such provision at the time he surrendered his old certificate and received a new one from the defendant. *Held,* that the right of membership of the deceased was not forfeited by continuing his connection with the disloyal lodge.

4. ———: ———: ———: EVIDENCE. The defendant offered to show that a delegate from the Evening Star Lodge to the grand lodge at the time the above resolution was adopted made a verbal report of said resolution at a meeting of the former lodge. *Held,* that it appearing that the deceased was not present at such meeting the evidence was properly excluded.

5. ———: ———: ———: INSTRUCTIONS. The court instructed the jury that to make said resolution binding upon the deceased it must be found that he knew and believed that he was thereby precluded from any affiliation with the disloyal lodge. *Held,* that in view of the evidence relied upon to show such knowledge the instructions were not improper.

*Appeal from Scott District Court.*—HON. ANDREW HOWAT, Judge.

WEDNESDAY, MAY 27, 1891.

THE plaintiff is the widow of August Warnebold, deceased. She brought this suit to recover of the defendant the avails of a certain policy of insurance or benefit certificate issued by the defendant to her late husband on the twentieth day of November, 1886. Her said husband died on the twentieth day of August, 1887. The defendant claims that said benefit certificate is [void, and that it was forfeited by reason of the failure of the said August Warnebold to comply with the rules, regulations and orders required of members of the said order. There was a trial by jury, and a

verdict and judgment for the plaintiff.   The defendant appeals.—*Affirmed*.

*Davison & Lane*, for appellant.

*Heinz & Hirschl*, for appellee.

ROTHROCK, J.—I.   August Warnebold became a member of Germania Lodge Ancient Order of United Workmen, at Davenport, in 1878.   He remained a member of said lodge in good standing until his death, and after his decease the plaintiff herein received the sum of two thousand dollars, the life insurance due to the beneficiary by reason of said membership.   In the year 1882 the grand lodge of said order in this state refused to comply with certain requirements of an organization called the supreme lodge, and by reason of said refusal there was a schism or division of the order in this state.   The members who refused to obey the requirements of the supreme lodge, and those who were in favor of obeying its mandates, became separate bodies or organizations.   Since that time there have been two grand lodges in Iowa, and each of them is sustained by separate local lodges.   Germania Lodge indorsed the action of the grand lodge in refusing to be controlled by the supreme lodge.   After the division or schism, another local lodge was organized at Davenport, called "Evening Star Lodge."   It was composed of members of the order who adhered to the supreme lodge.   Some of the members were in doubt as to which body they should adhere, and after joining the Evening Star Lodge they continued to pay their assessments and dues to the other body through the Germania Lodge.   These members were called " double headers." Warnebold united with Evening Star Lodge in 1884, and on the sixteenth day of November, 1886, he sur-

*1. MUTUAL-benefit insurance: contract: membership in two lodges.*

rendered his beneficiary certificate to the defendant herein, and a new certificate was issued to him. This last-named certificate was the only one held by him at the time of his death. After his death the loss was reported, and an assessment was made to pay the same, and said Warnebold was named therein as entitled to all the benefits of the order. But payment was refused, and is resisted in this suit upon the alleged ground that the plaintiff has already been paid the full amount to which she is entitled by the other state organization.

It is contended that Warnebold at no time held any life insurance in excess of two thousand dollars, and that, as that amount has been paid, there can be no further recovery. We are cited to the case of *Bock v. Ancient Order of United Workmen*, 75 Iowa, 462, as sustaining this claim. The cases are not parallel. In the cited case no new contract was made with what is denominated the loyal lodge. There was no surrender of the original certificate. In the case at bar a new contract was made with the defendant, the loyal lodge. It is this contract, the validity of which is in controversy in this action. It is wholly immaterial to the defendant what action the disloyal grand lodge took in regard to the settlement of any claim which the plaintiff had against it. The rights of the parties to this action must be determined by the certificate which it issued and upon which recovery is sought, and upon the fact whether Warnebold, at the time of his death, had forfeited his right to membership in the defendant lodge.

II. It is claimed that, although the said Warnebold had paid all assessments for death losses up to the time of his death, yet that he had forfeited his membership in Evening Star Lodge by failure to pay certain dues to the lodge. It is true that certain dues were past due at one time, but previous to his death these arrearages

2. ——: payment of dues: forfeiture: estoppel.

were paid to the satisfaction of the officer whose duty
it was to collect dues.   No action was taken by the
lodge suspending Warnebold from membership because
of this delinquency.   So far as the records of the lodge
disclosed, he was a member in good standing at the
time of his death.   But it is claimed that by failing to
pay his dues at the proper time, by the constitution of
the order he was suspended without any action being
taken.   This ignores all the rules of law applying to
waiver and estoppel.   The doctrine that there is some-
thing so binding and sacred in a contract of insurance
that waiver and estoppel can have no application to
them has long since been exploded.   We need not cite
authority upon this point.   It is too well understood to
be now questioned.   When the defendant and its sub-
ordinate local lodge received Warnebold's money, and
adjudged that he was in good standing when he died,
it is not a matter of much consequence what may be
the laws or rules or regulations of the order.   If any
court were to hold that in any ordinary contract such
acts did not constitute a waiver of all delinquences, it
would be an adjudication which would command the
respect of no one, and there is no reason why a contract
of insurance should be construed differently from any
other contract.

III.   It is further claimed that the said Warnebold
had forfeited his right to membership by continuing
his connection with the disloyal grand
3. ——: lodge
resolution:
notice.
lodge.   When he surrendered his certifi-
cate and entered into the new contract
with the defendant, and took the certificate upon which
this action is founded, he continued his membership in
the disloyal lodge.   There was nothing in the new
certificate which in terms prohibited him from retain-
ing his membership in the disloyal lodge.   But the cer-
tificate required the member to comply with all the
laws, rules and requirements of the order.   It appears

that in February, 1886, the defendant grand lodge passed a resolution, of which the following is a copy:

"Resolved that this grand lodge will not pay the beneficiary named in the beneficiary certificate of any member of this jurisdiction who is affiliating with or paying assessments or dues to the rebel grand lodge of the Ancient Order of United Workmen, or to a subordinate lodge that holds allegiance to said rebel grand lodge, unless such member shall sever all connection with such rebel grand lodge, and surrender his old beneficiary certificate to this grand lodge, and receive a reissued beneficiary certificate under the seal of this grand lodge; such reissued certificate to bear the same number as the old surrendered certificate."

A copy of this resolution was served on Warnebold and others by order of the grand master workman. This service was made on the twenty-fourth day of August, 1886. The resolution served on Warnebold did not contain the words "unless such member shall sever all connection with such rebel grand lodge." It therefore did not prohibit continued connection with the rebel grand lodge, and the only requirement was that the benefit certificate should be surrendered and a new one issued. This copy was kept and retained by the said Warnebold, and was found among his papers after his death. It was, so far as appeared to him, the resolution adopted by the grand lodge, and upon which he had the right to rely. The court submitted to the jury two special interrogatories as follows: "Did August Warnebold, at the time he surrendered the old certificate and received the one sued upon, know the terms of the resolution passed by the so-called 'Loyal Grand Lodge' on February 4, 1886, and that said resolution by its terms required that members adhering to said 'Loyal Grand Lodge' should sever all connections with the so-called 'Rebel Grand Lodge,' notwithstanding that the copy of said resolution previously served

on him omitted said requirement?" The jury answered
this interrogatory in the negative. It is claimed that
this finding of the jury was not authorized by the evi-
dence. All of the evidence tending to show that
Warnebold had such knowledge consists of conversa-
tions had with him by others, much of which is of a
loose and random character, and by an oral admission
made by him that he had such knowledge. In our
opinion, it cannot be said that the finding is not fairly
supported by the evidence. We place great reliance
upon the resolution served upon him, upon which, as
we have said, he had the right to rely.

IV. Another interrogatory submitted to the jury
was as follows: "Did any of the officers of the Even-
ing Star Lodge, after said Warnebold received the cer-
tificate served upon him, and before his death, know
that said Warnebold was affiliating with and was a
member of Germania Lodge?" This interrogatory was
answered in the affirmative. It is claimed that this
finding is without support in the evidence. We do not
regard this objection as well founded. We have exam-
ined the evidence with care, and it is sufficient to give
our conclusion.

V. The court sustained objections to the testi-
mony of one Camp, who was a delegate from the
Evening Star Lodge to the grand lodge at
the time the resolution in question was
adopted, in which it was sought to show that said
Camp made a verbal report of said resolution at a meet-
ing of Evening Star Lodge. This ruling of the court
is complained of by the defendant. It was correct.
The evidence shows that Warnebold was not present at
this meeting, and the offered evidence would not tend
to show notice to him that such a resolution was
adopted.

VI. There are objections and exceptions to some
of the instructions given by the court to the jury.

5. ——: ——: ——. These instructions are to the effect that,
*instructions.* in order to find that Warnebold was
bound by said resolution, it must be found that he
knew and believed that he was thereby precluded from
any affiliation with the rebel lodge. We think, in view
of the evidence relied upon to show such knowledge, the
instructions were not erroneous. As we have said, the
evidence on that question consisted largely in loose and
random conversations as to what said resolution really
was.

It is unnecessary to prolong this opinion. Finding as we do, that the answers of the jury to the special
interrogatories are supported by the evidence, it follows
that the defendant, by the knowledge of the officers of
the subordinate lodge, knew that Warnebold maintained
his relations with the rebel lodge, and made no objections thereto, waived any right to raise that question,
and, if Warnebold, in remaining a member of the rebel
lodge, did so without knowing that he was violating
his contract with the defendant, the defense founded
upon said resolution cannot avail the defendant.
Affirmed.